UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN BAKERY, INC., a California corporation,<br><br>         Plaintiff,<br><br>v.<br><br>HEALTHSOURCE INTERNATIONAL, INC. d/b/a NUCOCONUT, a California corporation,<br><br>         Defendants. | Case No.: 16cv2594-JAH (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND DENYING PLAINTIFF'S MOTION FOR A MORE DEFINITE STATEMENT** |

**INTRODUCTION**

  Pending before the Court is Defendant Healthsource International, Inc.'s ("Healthsource" or "Defendant") Motion to Dismiss Plaintiff Julian Bakery, Inc.'s ("Plaintiff" or "Julian Bakery") First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 9(b) and 12 (b)(6), or in the alternative, Defendant moves for a More Definite Statement pursuant to Rule 12(e). [Doc. No. 10]. The motion has been fully briefed by the parties. [Doc. Nos. 10, 13, 14]. After careful consideration of the pleadings, and for the reasons set forth below, the Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part, and Defendant's Motion for a More Definite Statement is **DENIED**.

# BACKGROUND

## I. Factual Background

Plaintiff is a California corporation who manufactures and sells a variety of health foods, including a line of PALEO WRAPS branded products[1]. See Doc. No. 4, ¶¶ 1, 2. In 2016, Plaintiff developed the idea for coconut flavored PALEO WRAPS, and contracted with Defendant to supply them with the coconut product, which Plaintiff would then sell under its own label Id. at ¶ 7. Plaintiff alleges that as early as March of 2016, Defendant began selling its own coconut flavored wrap marketed as the NUCOCONUT ("NUCO"), which is identical to Plaintiff's coconut flavored PALEO WRAPS. Id. at ¶¶ 9, 10. Additionally, Plaintiff alleges that Defendant sells its NUCO wraps by purchasing Google AdWords[2] associated with Plaintiff's PALEO WRAPS trademark. Id. at ¶ 12.

Plaintiff further alleges that contemporaneous to the launch of Defendant's NUCO wraps, Defendant repeatedly delivered the incorrect amount of coconut based product to Plaintiff, sometimes providing less than the ordered amount, and on one occasion, delivering more than $100,000 worth of unrequested goods. Id. at ¶¶ 13, 14. Additionally, Plaintiff alleges that simultaneous to the launch of Defendant's NUCO wraps, Defendant began providing Plaintiff with low quality ingredients which resulted in decreased sales and negative customer reviews. Id. at ¶ 16. Plaintiff specifically alleges that Defendant sent several shipments of coconut flake cereal which contained impurities that were not compliant with product specifications, and in turn caused damage to Plaintiff's "reputation, goodwill, business, sales, and profits." Id. at ¶ 17.

---

[1] U.S. Trademark Reg. No. 5,028,938

[2] "Google AdWords is a program through which the search engine sells 'keywords,' or search terms that trigger the display of a sponsor's advertisement. When a user enters a keyword, Google displays the links generated by its own algorithm in the main part of the page, along with the advertisements in a separate 'sponsored links' section next to or above the objective results. Multiple advertisers can purchase the same keyword, and Google charges sponsors based on the number of times users click on an ad to travel from the search results page to the advertiser's own website. Network purchased 'ActiveBatch' as a keyword from Google AdWords and a comparable program offered by Microsoft's Bing search engine." Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1142–43 (9th Cir. 2011)

Finally, Plaintiff alleges that contemporaneous to the launch of Defendant's NUCO wraps, Defendant's CEO misled at least one of Plaintiff's customers, Sunfood Corp. ("Sunfood"), causing Sunfood to believe that Defendant, and not Plaintiff, produces the PALEO WRAPS product. Id. at ¶ 19. Plaintiff specifically alleges that Defendant's CEO falsely informed Sunfood that the PALEO WRAPS featured on the television show *Dr. Oz* were Defendant's NUCO wraps, when they were actually PALEO WRAPS. Id. at ¶ 20. Plaintiff alleges that these erroneous claims have been shared on Facebook, as well as other social media sites. Id.

## II. Procedural Background

On November 28, 2016, Plaintiff filed the operative FAC asserting claims for (1) Trademark Infringement, 15 U.S.C. § 1114; (2) False Designation of Origin, 15 U.S.C. § 1125(a)(1)(A); (3) False Advertising, 15 U.S.C. § 1125(a)(1)(B); (4) Unfair Competition, Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (5) False Advertising (Cal. Bus. & Prof. Code § 17500 *et seq.*); (6) Breach of Implied Warranty of Merchantability; (7) Breach of Implied Warranty of Fitness for a Particular Purpose; (8) Fraud; and (9) Intentional Interference with Prospective Economic Advantage. [Doc. No. 4].

On January 9, 2017, Defendant moved to dismiss the FAC pursuant to Rules 12(b)(6), 9(b), and 12(e) of the Federal Rules of Civil Procedure. [Doc. No. 10]. Having been fully briefed by the parties, the Court deemed the matter suitable for disposition without oral argument, and took Defendant's Motion to Dismiss under submission. [Doc. No. 15].

## DISCUSSION

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss for failure to state a claim for relief. Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, the plaintiff is required to set forth a

"short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the reviewing court must assume the truth of all factual allegations and construe them in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557).

    a. **Analysis**

        i. **Whether Federal Rule of Civil Procedure 9(b) applies to Plaintiff's claims**

As an initial matter, Defendant asserts that all of Plaintiff's claims, excluding the implied warranty claims, fail because of noncompliance with Federal Rule of Civil Procedure 9(b). See generally Doc. No. 10.

4

Rule 9(b) of the Federal Rules of Civil Procedure, requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under Ninth Circuit case law, Rule 9(b) imposes two distinct requirements on complaints alleging fraud. First, the basic notice requirements of Rule 9(b) require complaints pleading fraud to "state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994); see also Vess v. Ciba-Geigy Corp., U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted) (stating that a plaintiff must set forth the "who, what, when, where and how" of the alleged misconduct). Second, Rule 9(b) requires that the complaint "set forth an explanation as to why the statement or omission complained of was false or misleading." Yourish v. California Amplifier, 191 F.3d 983, 993 (9th Cir. 1999) (citation and quotation omitted).

"Rule 9(b) applies when (1) a complaint specifically alleges fraud as an essential element of a claim, (2) when the claim 'sounds in fraud' by alleging that the defendant engaged in fraudulent conduct, but the claim itself does not contain fraud as an essential element, and (3) to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud.' " Davis v. Chase Bank U.S.A., N.A., 650 F.Supp.2d 1073, 1089–1090 (C.D.Cal.2009) (citing Vess v. Ciba–Geigy Corp. USA, 317 F.3d, 1097, 1102–06). The Vess court held that "where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." Id. at 1104. So, on a motion to dismiss, "if particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim . . . [and] then examine the allegations that remain to determine whether they state a claim." Id. (quoting Lone Star Ladies Inv. Club v. Schlotzsky's Inc., 238 F.3d 363, 368 (5th Cir.2001).

Defendant specifically argues that Plaintiff's trademark infringement claim fails to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). See Doc.

5

No. 10, pg. 12. Defendant contends that Rule 9(b) applies because Plaintiff alleged the infringing conduct was done in a "deceptive, false, and intentional" fashion. Id. Defendant cites to no authority, however, that stands for the proposition that Rule 9(b) can be applied to trademark infringement claims under Section 32 of the Lanham Act. See 15 U.S.C. §§ 1114. Instead, Defendant relies on Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC, No. C 14-0437 CW, 2014 WL 5812294, at *8 (N.D. Cal. Nov. 7, 2014), arguing that 9(b) applies to Lanham Act claims where Plaintiff alleges "deceptive" and "fraudulent" conduct. The Heartland case concerns the false advertising section, under Section 43 of the Lanham Act, and while it will become relevant later in this order, it is not directly applicable to Plaintiff's Trademark Infringement claim. The Ninth Circuit has never established that 9(b) applies to trademark infringement claims, moreover, this Court only found a single instance where the heightened 9(b) standard was applied to an infringement claim in the Ninth Circuit. See Sparrow Inc. v. Lora, No. CV 14-01188-MWF(JCX), 2014 WL 12561587, at *1 (C.D. Cal. Aug. 5, 2014) ("Though the word 'fraud' is not used, the crux of Plaintiff's trademark infringement claim is that Lora marketed goods by falsely representing his affiliation with Free City. These allegations of fraud must be pleaded with particularity under Rule 9(b).").

Here, unlike in Sparrow, Plaintiff has not alleged that Defendant fraudulently represented an affiliation or partnership with Julian Bakery. Instead Plaintiff alleges Defendant used the trademark PALEO WRAPS on their website and social media posts resulting in customer confusion. Additionally, the majority of district court decisions reject the applicability of 9(b) to § 1114 trademark infringement claims. See Rolex Watch U.S.A., Inc. v. Agarwal, No. CV1206400MMMMRWX, 2012 WL 12886444, at *3 (C.D. Cal. Dec. 17, 2012) ("[The court] was unable to find any case in which the heightened standard was applied to such claims. Rather, the authority it has located was to the contrary. . ."); Stubbs Collections, Inc. v. Davis, No. CIV. A. 3-99CV2440-P, 2000 WL 381947, at *4 (N.D. Tex. Apr. 14, 2000) ("[A] claim of infringement under 15 U.S.C. § 1114 does not constitute a claim subject to the heightened pleading requirements of Rule 9(b)"); Indiaweekly.com,

6

LLC v. Nehaflix.com, Inc., 596 F. Supp. 2d 497, 502 (D. Conn. 2009) ("The Court concludes that this argument is unsupported by case law. No court in this district has ever dismissed a Lanham Act claim for failure to comply with Rule 9(b), nor has the Second Circuit ever held that it should."). Regardless of the fraudulent averments included in the trademark infringement cause of action, the Court declines to apply the heightened pleading standard to Plaintiff's trademark infringement claim as it is factually distinguishable from Sparrow and unsupported by the vast majority of case law.

In addition, Plaintiff asserts two more Lanham Act claims, for false designation of origin and false advertising, which fall under Section 43 of the Act. See Doc. No. 4, ¶¶ 29–41; 15 U.S.C. §§ 1125(a)(1)(A-B). "The Ninth Circuit has not established that Rule 9(b) applies to false designation of origin and false advertising Lanham Act claims." Pac. Office Automation, Inc. v. Tracy, No. 3:17-CV-01484-HZ, 2018 WL 847245, at *2 (D. Or. Feb. 10, 2018). However, in contrast to the trademark infringement claim discussed above, there is an abundance of relevant and persuasive case law standing for the proposition that Rule 9(b) should be applied to Section 43 claims when they are "grounded in fraud." See Smoothreads, Inc. v. Addventure Prod., Inc., No. 08 CV 1634 MMA (AJB), 2009 WL 10671911, at *7 (S.D. Cal. Sept. 29, 2009) ("A claim [under Section 43 of Lanham Act] is not exempt from the strictures of [Rule 9(b)]."); VitalGo, Inc. v. Kreg Therapeutics, Inc., No. 16-CV-5577, 2017 WL 6569633, at *7 (N.D. Ill. Dec. 21, 2017) (citing Ferris Mfg. Corp. v. Carr, 2015 WL 279355, at *6 (N.D. Ill. Jan. 21, 2015) ("applying Rule 9(b) standard to Lanham Act claim for false designation of origin")); Bobbleheads.com, LLC v. Wright Bros., Inc., 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017) ("[T]he Court agrees with the weight of authority that Rule 9(b) applies to Lanham Act claims that are grounded in fraud."); Pestube Sys., Inc. v. HomeTeam Pest Def., LLC., No. CIV-05-2832-PHX-MHM, 2006 WL 1441014, at *5 (D. Ariz. May 24, 2006) (". . . Plaintiff's Lanham Act claim is essentially "grounded" or "sounds" in fraud and is governed by Rule 9(b) as a result."). The Court finds the reasoning in the above cases persuasive, that where a Section

43 Lanham Act claim sounds in fraud, the heightened pleading standard of 9(b) is appropriate.

Here, Plaintiff alleges that (1) "[Defendant's CEO] misleadingly told [Plaintiff's current customer] that [Defendant], and not Julian, makes the PALEO WRAP"; (2) Defendant's CEO "falsely claimed" that their NUCO wraps were "featured on the television show Dr. Oz" when in reality it was Plaintiff's PALEO WRAPS products that were on the show; and (3) Defendant's "erroneous claims have been made and shared on Facebook and other social media sites." See Doc. No. 4, ¶¶ 19, 20. Plaintiff further alleges Defendant's "actions have been knowing, intentional, wanton, and willful," and "Defendant has made false or misleading description or representation of fact . . . about its and/or Julian's product." Id. at ¶¶ 33, 35. Plaintiff's allegations in support of its Section 43 Lanham Act claims are based upon alleged misrepresentations, thus they are grounded in fraud. Accordingly, the Court determines that Rule 9(b) applies to Plaintiff's claims for False Designation of Origin and False Advertising.

Additionally, Rule 9(b) will apply to Plaintiff's state law claims for Unfair Competition, False Advertising, Fraud, and Intentional Interference as they rely on the same allegations, and thus are similarly grounded in fraud. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-27 (9th Cir. 2009) (applying Rule 9(b) to claim for false advertising under California Business and Professions Code § 17200); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102-04 (9th Cir. 2003) (applying Rule 9(b) to claim for false advertising under California Business and Professions Code § 17500); Sky Billiards, Inc. v. WolVol, Inc., No. CV1502182RGKKKX, 2016 WL 7479426, at *4 (C.D. Cal. Feb. 22, 2016) ("Although misrepresentation can constitute independently wrongful conduct to support a claim for intentional interference with prospective economic advantage, any such allegation must meet the heightened particularity standard of Rule 9(b)."). Having determined the appropriate pleading standards, the Court will analyze the sufficiency of each claim in turn below.

\\

### ii. Trademark Infringement

Plaintiff alleges trademark infringement pursuant to 15 U.S.C. § 1114 claiming Defendant utilized the PALEO WRAPS mark to promote and sell its own coconut-based wraps in a manner which is likely to cause confusion among ordinary consumers. See Doc. No. 4, ¶24. To prevail on its trademark infringement and counterfeiting claim, Plaintiff must prove that, without its consent, Defendant used in commerce a reproduction or copy of Plaintiff's registered trademark in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers. Coach, Inc. v. Diana Fashion, No. 11-2315 SC, 2011 WL 6182332, at *3 (N.D. Cal. Dec. 13, 2011) (citing 15 U.S.C. § 1114(1)(a); Brookfield Commc'n v. West Coast Entm't, 174 F.3d 1036, 1046–47 (9th Cir.1999)).

Here, Plaintiff alleges that the name PALEO WRAPS is "inherently distinctive" and has "come to be uniquely associated with Julian." Doc. No. 4, ¶ 23. Plaintiff further alleges that Defendant used the PALEO WRAPS mark, without their consent, to "promote and sell its coconut-based [NOCU] wraps." Id. at ¶ 24. Finally, Plaintiff alleges Defendant purchased Google AdWords for PALEO WRAPS, used the PALEO WRAPS mark in its online advertising, and shared the PALEO WRAPS mark on social media sites in conjunction with its own NUCO wrap product. Id. Defendant argues that Plaintiff fails to allege plausible facts showing a likelihood of customer confusion. See Doc. No. 4. However, in ruling on a motion to dismiss, the Court is permitted to draw "reasonable inferences" from the factual allegations, and all such inferences are drawn in the non-movant's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Here, the facts alleged support the inference that using the PALEO WRAPS mark in Defendant's online advertising is likely to lead a reasonable consumer to believe they were purchasing the coconut wraps sold by Plaintiff. Accordingly, the Court finds that Plaintiff has sufficiently stated a claim, and **DENIES** Defendant's Motion to Dismiss as to the Trademark Infringement claim.

9

16cv2594-JAH (KSC)

### iii. False Designation of Origin and False Advertising under § 43 of the Lanham Act

As stated above, these claims must be pled with particularity as required by Rule 9(b). Specifically, Plaintiff "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly false statement, and why it is false." SKEDKO, Inc. v. ARC Prod., LLC, No. 3:13-CV-00696-HA, 2014 WL 585379, at *1 (D. Or. Feb. 13, 2014) (quoting Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054–55 (9th Cir.2011)). The Court finds Plaintiff has failed in this regard.

In its claim for False Designation of Origin[3], Plaintiff only alleges in general fashion, that Defendant's "use of the PALEO WRAPS mark in interstate commerce, without Julian's consent as alleged above, is a false designation of origin that is likely to cause confusion . . . in the minds of the public." See Doc. No. 4, ¶ 30. Moreover, Plaintiff's only allegations concerning Defendant use of the PALEO WRAPS mark include Defendant's alleged "purchase of Google AdWords for PALEO WRAPS" and Defendant's alleged use of the mark "in its online advertising of its NUCO wraps." These generalized allegations are insufficient to satisfy the Rule 9(b) particularity requirement. First, Plaintiff does not allege how purchasing Google AdWords associated with "PALEO WRAP" is "likely to cause confusion, mistake, or deception." Similarly, Plaintiff fails to allege the particulars of Defendant's use of the PALEO WRAPS mark in its online advertising. It is unclear to the Court the specific context with which the mark was used, when the mark was used,

---

[3] To prevail on a false designation of origin claim, Plaintiff must prove: (1) ***defendant uses a designation (any word, term, name, symbol, device, or any combination thereof) or false designation of origin***; (2) the use was in the context of interstate commerce; (3) the use was in connection with goods or services; (4) the ***designation is likely to cause confusion, mistake or deception*** as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff has been or is likely to be damaged by these acts. See Summit Tech., Inc. v. High-Line Med. Instruments, Co., 933 F. Supp. 918, 928 (C.D. Cal. 1996); JS Led Tech. Corp. v. Zhang, No. CV1402250RGKPJWX, 2014 WL 12561075, at *5 (C.D. Cal. Aug. 7, 2014) (emphasis added).

10

what specific website it was used on, and how this use is likely to confuse the consumer. While the Court was able to reasonably infer consumer confusion for Plaintiff's trademark infringement claim, it is unable to do so here, due to the amplified pleading standard of Rule 9(b). Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047 (9th Cir. 2011) ("The heightened pleading standard for allegations of fraud precludes allegations that identify a general sort of fraudulent conduct but do not specify any particular circumstances of any discrete fraudulent statement.")

Likewise, Plaintiff's false advertising claim under 15 U.S.C. § 1125(a)(1)(B) is similarly deficient. In order to prevail on their false advertising claim, Plaintiff must establish: (1) *in advertisements*, defendant made false statements of fact about its own or another's product; (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; (3) such deception is material, in that it is likely to influence the purchasing decision; (4) defendant caused its falsely advertised goods to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public. See Cook, Perkiss, and Liehe, Inc. v. N. Cal. Collection Serv., 911 F.2d 242, 244 (9th Cir.1990) (emphasis added). In support of this cause of action, Plaintiff alleges that Defendant "has falsely represented that its NUCO coconut wraps were featured on the Dr. Oz television show, when in fact, the products featured were Julian's trademarked PALEO WRAPS." Doc. No. 4, ¶ 35. However, just as the allegations in support of the online advertising discussed above, these allegations also fail to pass 9(b) muster. More detail about these alleged social media postings is required, including the account responsible and date of the postings, in order to ". . . give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly–Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001). Accordingly, Plaintiff's remaining section 43 Lanham Act claims are **DISMISSED without prejudice**.

### iv. False Advertising Under California Business and Professions Code § 17500 and Unfair Competition Under California Business and Professions Code § 17200

For the reasons stated above, and because Plaintiff's state law claims rely upon the same allegations as the Section 43 Lanham Act claims, the Court finds them to be similarly deficient. Pom Wonderful LLC v. Tropicana Prod., Inc., No. CV 09-566 DSF (CTX), 2009 WL 10674426, at *4 (C.D. Cal. July 6, 2009) (Finding state law claims under § 17200 and § 17500 failed to plead with sufficient particularity after an analysis and dismissal of plaintiff's Lanham Act claim). Accordingly, Plaintiff's state law claims for Unfair Competition and False Advertising are **DISMISSED without prejudice**.

### v. Breach of Implied Warranty of Merchantability

California law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale." Cal. Com. Code § 2314(1). The California Supreme Court has explained that "merchantability" has several meanings, including: "the product must '[c]onform to the promises or affirmations of fact made on the container or label,' and must be 'fit for the ordinary purposes for which such goods are used.' " Augustine v. Natrol Prod., Inc., No. 3:13-CV-3129-H DHB, 2014 WL 2506284, at *5 (S.D. Cal. May 15, 2014) (quoting Hauter v. Zogarts, 14 Cal.3d 104, 118, 120 Cal.Rptr. 681, 534 P.2d 377 (1975). A plaintiff who claims a breach of the implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use." Mocek v. Alfa Leisure, Inc., 114 Cal.App. 4th 402, 406 (2003).

Plaintiff alleges Defendant failed to supply goods that were fit for their ordinary purpose. See Doc. No. 4, ¶¶ 16–17, 54–56. According to Plaintiffs, it is ordinarily expected that the products purchased from Defendant adequately behave as wraps for use with food, meaning they would resist disintegrating, would not degrade in quality, and would be free of impurities and foreign substances. Id. at ¶ 54. Plaintiff further alleges that the product purchased by Defendant began to "deteriorate in taste and texture," and in one instance "a customer . . . swallowed a foreign object contained in the coconut cereal." Id. at ¶¶ 16, 17.

Finally, Plaintiff alleges that these deficiencies rendered the product unfit for the ordinary purpose for which the goods are used. Id. at ¶ 55. The Court finds these allegations sufficient to plead a plausible implied warranty of merchantability claim. Defendant's arguments regarding allowed variations and whether Defendant cured the alleged defects are better suited for the summary judgment stage of the litigation, when the Court has the benefit of a more developed record. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss as to Plaintiff's claim for breach of the implied warranty of merchantability.

### vi. Breach of Implied Warranty of Fitness for a Particular Purpose

In order to state a claim for breach of implied warranty of fitness for a particular purpose, a plaintiff must allege a good's unique purpose as distinct from its ordinary purpose. As noted in American Suzuki Motor Corp. v. Superior Court:

> A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is ***peculiar to the nature of his business*** whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.

37 Cal. App. 4th 1291, 1295 n.2, 44 Cal. Rptr. 2d 526 (1995) (emphasis added) (citation omitted). Goldsmith v. Allergan, Inc., No. CV 09-7088 PSG (EX), 2010 WL 11463630, at *3 (C.D. Cal. Feb. 24, 2010). Defendant argues that merely reselling the coconut wraps under a trade name is an ordinary purpose and therefore encapsulated in the implied warranty of merchantability. See Doc. No. 10, pg. 20. Here, Plaintiff only alleges that the particular purpose of the coconut wraps and coconut flakes was to meet and satisfy the demand of their customers. See Doc. No. 4, ¶ 62.

Plaintiff fails to allege, however, how taking the wraps and flakes purchased from Defendant and reselling them under a different trade name is "peculiar to the nature of its business." Nor has Plaintiff alleged that they used the wraps and flakes for anything other than their ordinary purpose–selling the product to the ultimate end user. In NuCal Foods, Inc. v. Quality Egg LLC, the court rejected a similar argument, finding that repackaging of a food item, which is then sold to the ultimate end user, is an ordinary purpose for which

the goods are to be used. 918 F. Supp. 2d 1037, 1044 (E.D. Cal. 2013) ("Eggs such as those at issue here are ordinarily used for human consumption, whether as a processed and pasteurized liquid or as unbroken shell eggs. Quality Egg does not allege, nor could the court accept, that buying eggs to be repackaged and sold to consumers as unbroken shell eggs is "peculiar to the nature" of its business."). Accordingly, Plaintiff's breach of implied warranty for fitness for a particular purpose claim is **DISMISSED without prejudice.**

### vii. Fraud

As previously articulated, in order to satisfy the particularity requirement for fraud claims under Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting Cooper v. Picket, 137 F.3d 616, 627 (9th Cir. 1997)). Here, Plaintiff alleges that Defendant made false representations, promises, and assurances in order to induce Plaintiff into entering a business relationship. See Doc. No. 4, ¶ 71–72. Plaintiff further alleges that Defendant only entered the business relationship in order to verify demand for products similar to PALEO WRAPS, and once the demand was validated, Defendant began siphoning off Plaintiff's customers as well as using Plaintiff's research for their own benefit. Id. at ¶ 73.

Plaintiff's fraud claim falls woefully short of the heightened pleading standard required by Federal Rule of Civil Procedure 9(b). First, Plaintiff's FAC provides neither the actual date when the contractual relationship between the parties first began, or when the alleged false and misleading representations were made. Id. at ¶¶ 6, 72. Additionally, because Healthsource is a "corporate defendant," Plaintiff must allege "the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Dubin v. BAC Home Loans Servicing, 2011 WL 794995 at *5–6 (N.D.Cal., Mar.1, 2011); Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991). Because Plaintiff has failed to plead the specific "who, what, when, where, and how of the misconduct charged," it has not met the heightened pleading standards of Rule 9(b).

Kearns, 567 F.3d at 1124. Accordingly, Plaintiff's fraud claim is **DISMISSED without prejudice**.

### viii. Intentional Interference with Prospective Economic Advantage

To state a claim for intentional interference with prospective economic advantage, a plaintiff must show: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1153, (2003)). Here, Plaintiff asserts that they had economic relationships with a number of third parties–such as vendors and costumers– to buy and sell their PALEO WRAPS products. See Doc. No. 4, ¶ 80. Plaintiff further alleges that Defendant, with full knowledge of these associations, intentionally interfered with these relationships by falsely promoting their NUCO wrap as the superior alternative. Id. at ¶ 82. Finally, Plaintiff asserts that Defendant's CEO approached one of Plaintiff's customers, Sunfood Corporation, about purchasing NUCO wraps directly from Defendant rather than Plaintiff's PALEO WRAPS. Id. at ¶ 19.

Defendant argues, and the Court agrees, that Plaintiff failed to plausibly allege an actual disruption or proximately caused harm. See Doc. No. 10, pg. 24 (citing Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1151 (9th Cir. 2008) ("Sybersound merely states in a conclusory manner that it "has been harmed because its ongoing business and economic relationships with Customers have been disrupted. Sybersound does not allege, for example, that it lost a contract nor that a negotiation with a Customer failed."). Just as in SyberSound, Plaintiff alleges Defendant began to solicit many of their customers, including Sunfood, but fails to allege any specific disruption with those relationships. Accordingly, Plaintiff's cause of action for tortious interference with prospective economic relations is **DISMISSED without prejudice**.

15

## II. Federal Rule of Civil Procedure 12(e)

Federal Rule of Civil Procedure 12(e) states, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." A motion for a more definite statement attacks the unintelligibility in a pleading, not simply the mere lack of detail. See Bureerong v. Uvawas, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996). Motions for a more definite statement are "not favored by the courts since pleadings in federal courts are only required to fairly notify the opposing party of the nature of the claim." Cree, Inc. v. Tarr Inc., No. 317CV00506GPCNLS, 2017 WL 3219974, at *8 (S.D. Cal. July 28, 2017) (quoting Griffin v. Cedar Fair, L.P., 817 F.Supp.2d 1152, 1154 (N.D. Cal. 2011)). Ultimately, therefore, a Rule 12(e) motion "should not be granted unless the defendant cannot frame a responsive pleading." Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F.Supp. 940, 949 (E.D. Cal. 1981) (citing Boxall v. Sequoia Union High Sch. District, 464 F.Supp. 1104, 1114 (N.D. Cal. 1979)).

In the alternative of dismissal, Defendant seeks a more definite statement on each of Plaintiff's claims. See Doc. No. 10. The portion of this motion concerning each claim upon which Defendant prevailed on its Rule 12(b)(6) motion is **DENIED** as moot. Also, Defendant's motion is **DENIED** concerning Plaintiff's surviving claims, as the Court finds Plaintiff's allegations are not "so vague or ambiguous that [Defendant] cannot reasonably prepare a response." Fed.R.Civ.P. 12(e).

\\
\\
\\
\\
\\
\\
\\
\\

# CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss Plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** in part and **DENIED** in part;
   a. Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's claims for False Designation of Origin, § 1125(a) False Advertising, Unfair Competition, §17500 False Advertising, Implied Warranty of Fitness for a Particular Purpose, Fraud, and Intentional Interference with Prospective Economic Advantage **without prejudice**;
   b. Defendant's Motion to Dismiss is **DENIED** in all other respects**;**
2. Defendant's Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e) is **DENIED**;
3. To the extent that Plaintiff is able to cure the noted deficiencies, Plaintiff may file a Second Amended Complaint **within twenty-one (21) days** from the date of this Order.

**IT IS SO ORDERED**.

DATED: March 28, 2018

_____
JOHN A. HOUSTON
United States District Judge